## Commonwealth v. Thomas

*James W. Hawkins*, district attorney, with him *Carl J. Crawford*, for Commonwealth.

*James J. Purman* and *K. W. Scott*, with them *Harold Hanwer*, for defendant.

SAYERS, P. J., October 24, 1933.—The defendant, Florin C. Thomas, was convicted on an information made by Don Varner, prosecuting on behalf of the

Commonwealth, charging said defendant with having on or about June 21, 1933, wantonly, maliciously and unlawfully killed and destroyed a female hound dog with black and white markings, above 6 months of age, duly licensed by the Treasurer of Greene County for the year 1933 to the prosecutor, a resident of Greene County, Penna., as owner. The information further sets forth that the license was issued to the prosecutor January 21, 1933, said license bearing no. 2964, evidenced by a metal tag bearing said number, securely fastened to a leather collar worn by said dog at the time it was killed, and that defendant did unlawfully remove said license tag from said dog.

A hearing was held September 1, 1933, and testimony received. The defendant was pronounced guilty by the justice of the peace and was fined $50 and costs of prosecution as provided by the Dog Tax Law of May 11, 1921, P. L. 522, secs. 3 and 23, and its supplements.

That defendant, on presentation of his petition to the court of quarter sessions at no. 36 December Sessions, 1933, setting forth that the judgment of the justice's court was unjustly and contrary to law, was granted an appeal by special allowance.

The appeal was allowed to the defendant as provided by the Act of April 17, 1876, P. L. 29, and its supplements of April 22, 1905, P. L. 284; July 11, 1917, P. L. 771, and April 1, 1925, P. L. 98, 19 PS § 1189, and he filed his recognizance in the court of quarter sessions to answer said complaint as on a charge of misdemeanor before said court. The appeal came on to be heard on October 24, 1933.

From the evidence produced, the court finds as follows:

1. Don Varner was on June 21, 1933, the owner of the dog described in the complaint.

2. On said date Florin C. Thomas, the defendant, and his grandson, a boy about 9 years old, shot and killed said dog in a field belonging to the defendant between 9 and 10 o'clock p. m., near defendant's residence on his farm in Franklin Township, Greene County, Penna.

3. At and before the time it was killed, the dog was duly licensed by the Treasurer of Greene County in the name of Don Varner as owner, and was wearing a leather collar on which was secured license tag no. 2964.

4. At the time there were in the field where the dog was killed, which belonged to the defendant and contained about 50 acres, 125 lambs and ewes.

5. Sometime on the same evening prior to the killing of the dog, Don Varner turned his three dogs loose on his father's farm about a mile from the Thomas land, and they struck a fox trail and ran it for sometime, and about 9 o'clock the prosecutor left the dogs running and went home, and two of the dogs did not return to his home until next morning about daylight, the third or missing dog being the one that was killed.

6. The prosecutor learned that a dog had been killed by the defendant and that its collar had been taken from the dog, and that on Sunday, June 25, 1933, the defendant gave the collar with tag attached to S. W. Scott, State Agent of the Bureau of Animal Industry, believing that such course of conduct was defendant's duty under the law.

7. For sometime before the dog was shot, the sheep in the field were heard running and bawling or bleating, and the dogs were running and barking in the same field enclosed by fences, the dogs appearing to be after the sheep and near the sheep, which were frightened and worried by the presence and barking of the dogs.

8. Following the sound of the sheep and the dogs, the defendant and his grandson, with guns and a flashlight, entered the field. They were unable to

see, but they heard the frightened sheep and the dogs and finally discovered with the aid of the flashlight, prosecutor's dog, which they shot and killed.

9. The next evening the defendant and a 14-year old grandson went into the field and buried the dog, first taking off its collar on which was the license tag.

10. Prior to the killing of the dog, the prosecutor and his dogs had been engaged in lawful hunting, but for sometime before the dog was killed it was not in reasonable control or accompanied by its owner within the meaning of the first paragraph of section 25 of the Act of May 11, 1921, P. L. 522, as amended by the Act of May 6, 1927, P. L. 833, sec. 11, 3 PS § 484.

11. The prosecutor's dog was not under reasonable control or accompanied by its owner at about 9 o'clock in the evening on a dark night, and it had entered and was in the enclosed field of defendant and was worrying and annoying his sheep by running and barking at them or near them.

12. At the time it was killed, the dog was annoying livestock in defendant's enclosure and defendant had a right to treat it as a private nuisance and kill it as provided by the second paragraph of the tenth section of the Act of May 6, 1927, P. L. 833, amending section 22 of the act of assembly above recited, which reads as follows:

"Any unlicensed dog that enters any field, or any dog that enters any field or inclosure where live stock or poultry are confined, shall constitute a private nuisance and the owner or tenant of such field, or their agent or servant, may kill such dog, while it is in the field or inclosure, without liability or responsibility of any nature for such killing."

13. It was therefore not an unlawful killing of a dog bearing a license tag for the current year 1933 as provided by section 23 of the Act, but was within the exception above noted in section 22 of the Act of 1921 and its supplement of 1927, whereby the presence of the dog in the field with live stock is declared to be a private nuisance, which defendant had a lawful right to abate by shooting the dog.

14. The fourth section of the Act of May 11, 1921, P. L. 522, and its supplement of 1927, reads as follows:

"It shall be unlawful for any person, except the owner or his authorized agent, or an agent of the Department of Agriculture to remove any license tag from a dog collar, or to remove any collar with a license tag attached thereto from any dog." 3 PS § 464.

15. This section was enacted to prevent the removal and theft of the license tag, or to facilitate the theft of the dog or prevent its identification as belonging to its lawful and licensed owner. The removal of the collar bearing the license tag after the dog was dead and about to be buried and the turning of the collar and tag over to the agent of the Department of Agriculture was not an unlawful removal as contemplated in said act, but was done to aid in the identification of the dog and for the benefit of the owner both of the license and the dog, and with no intent to violate the spirit and intendment of the law.

16. The defendant, being not guilty, could not lawfully be directed to pay the costs.

17. The prosecutor was honest though mistaken in bringing the prosecution, and the costs should not be imposed upon him. His prosecution is really for the benefit of the State and the fine if recovered would be payable to the State. The Act of March 31, 1860, P. L. 427, sec. 62, does not specifically give the court trying a misdemeanor without a jury any power over the costs. The court acting in place of a jury should have the same power of disposition over the costs as a jury, and the Act of May 19, 1887, P. L. 138, amending the Act of 1860, was passed for the purpose of giving the court such power. When prosecution

is terminated by sentence of the court, the county should pay the costs: Commonwealth v. Dickinson, 62 Pa. Superior Ct. 468.

This prosecution is for the benefit of the Bureau of Agriculture, a State agency, which would receive all fines to be used as a "dog fund" to pay sheep damages, and the county, not the informer prosecutor, should, where he presents a proper case for prosecution, be required to pay the costs. No specific act of assembly gives the court power to impose the costs of prosecution on the county, unless it is section 64 of the Act of 1860, which provides that in all cases where defendants charged with crime are discharged according to law without payment of costs, the costs of prosecution shall be paid by the county. There did not appear to be any other act to support the ruling in Commonwealth v. Dickinson, supra. Such imposition of costs derives its whole support from the policy of the law to protect witnesses and agents of the Commonwealth, which is the same in this case as in the Dickinson case. The county should pay the costs.

### Judgment

And now, October 24, 1933, after hearing the evidence of the Commonwealth and the defendant, and their witnesses, the court finds the defendant Florin C. Thomas not guilty, and directs the County of Greene to pay the costs of prosecution. From S. M. Williamson, Waynesburg, Penna.